UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
APR - 9 2014
CLERK, US DISTRICT COURT
NORFOLK, VA

WORLD FUEL SERVICES TRADING,
DMCC, D/B/A BUNKERFUELS

Plaintiff,

v.                                              Civil Action No. 2:13cv173

M/V HEBEI SHIJIAZHUANG,
HER ENGINES, TACKLE,
EQUIPMENT, APPURTENANCES,
ETC., IN REM

Defendant,

v.

HEBEI PRINCE SHIPPING COMPANY,
LTD,

Claimant.

## OPINION AND ORDER

This matter is before the Court following a hearing on April 8, 2014, which was conducted to resolve the damages issues remaining after the Court granted summary judgment to World Fuel Services Trading, DMCC, d/b/a Bunkerfuels ("Plaintiff"), entitling Plaintiff to a maritime lien. ECF No. 97. For the reasons discussed below, the Court awards Plaintiff prejudgment interest at the prime rate, accruing as of November 28, 2012, the date payment was due, until April 4, 2014, the date agreed upon by the parties and the date the Court entered summary judgment.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As discussed in greater detail in the Court's April 4, 2014 Opinion and Order, Tramp Maritime Enterprises Ltd. ("Tramp") chartered the M/V HEBEI SHIJIAZHUANG ("the vessel") from Hebei Prince Shipping Company, Ltd. ("Claimant"). During Tramp's third consecutive time charter, Tramp placed an order with Plaintiff, through its broker, Bunkerfuels Hellas, for fuel bunkers to be delivered to the vessel on or about October 27, 2012. Bunkerfuels Hellas sent a bunker confirmation to Tramp, confirming the order and incorporating Plaintiff's "general terms and conditions" ("General Terms"), located at www.wfscorp.com. Compl. Ex. 3, ECF No. 1-3. Plaintiff's General Terms provided that "[p]ast due amounts shall accrue interest at a rate equal to the lesser of 2.0 percent per month, or the maximum rate permitted by applicable law." ECF No. 1-5 at 5. In addition, the General Terms provided for a "5% administrative fee" on "amounts more than 15 days past due," and indicated "Buyer['s] agree[ment] to pay . . . internal and external attorneys fees associated with enforcing a maritime lien." Id. The bunker confirmation stated that the payment terms would be "30 DDD by TTT," id., which the parties agree indicated that payment would be due on November 28, 2012.[1]

---

[1] Plaintiff's General Terms indicate that "unpaid invoices from Seller to Buyer shall immediately be considered overdue [when] any invoice of Seller to Buyer is seven (7) days overdue." ECF No. 1-5 at 5. However, based upon the bunker confirmation payment terms and the

2

Tramp failed to pay for the fuel bunkers and, on April 4, 2013, Plaintiff filed a Verified Complaint with the Court, requesting that the vessel be arrested upon arrival in the Eastern District of Virginia. The Court granted Plaintiff's request and the vessel was arrested on or about April 8, 2013. On April 10, 2013, Plaintiff and Claimant agreed, by joint stipulation, that Plaintiff would release the vessel from arrest in exchange for a cash bond deposited by Claimant with the Court in the amount of $850,000. ECF No. 11.

On April 4, 2014, the Court granted summary judgment to Plaintiff, finding, "as a matter of law, that Plaintiff is entitled to a maritime lien against the vessel." ECF No. 97 at 34. However, the Court reserved judgment on the following damages issues indicated in the March 27, 2014 final pretrial order: "the total amount due to Plaintiff for which it has a maritime lien on the Vessel, whether Plaintiff is entitled to prejudgment interest, and whether Plaintiff is entitled to administrative charges, custodia[] legis expenses, attorney fees and interest." Id. (internal quotation marks omitted) (quoting ECF No. 85 at 21). The Court also pointed the parties to the 2009 opinion by Judge J. Frederick Motz in Triton Marine Fuels, Ltd. v. M/V PACIFIC CHUKOTKA, 671 F. Supp. 2d 753 (D. Md. 2009), in which Judge Motz observed that "an FMLA lien does not

---

parties' agreement indicated at the April 8, 2014 hearing, the Court accepts November 28, 2012 as the date the payment became overdue.

3

necessarily cover all the terms of the underlying contract." Id. at 760.

At the April 8, 2014 hearing, Plaintiff informed the Court that it withdrew its claim for attorney's fees and the 5% administrative fee. The parties confirmed that the only dispute as to the award of custodia legis expenses, granted by the Court's October 8, 2013 order, ECF No. 24, was whether the final amount had yet been determined.[2] Thus, the only remaining issues for the Court to determine are the date from which interest began to accrue and the prejudgment interest rate that will "fully compensate [Plaintiff] for its loss." Triton, 671 F. Supp. 2d at 764.

## II. STANDARD OF REVIEW

"The award of prejudgment interest in admiralty cases rests within the sound discretion of the district court." Ameejee Valleejee & Sons v. M/V VICTORIA U, 661 F.2d 310, 313 (4th Cir. 1981). Under maritime law, an award of prejudgment interest is "the rule rather than the exception, and, in practice, is well-nigh automatic." U.S. Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 828 (4th Cir. 1992) (quoting Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026, 1029 (5th Cir. 1986)). Prejudgment interest is awarded "as compensation for the use of funds to which the claimant was rightfully entitled." Id. (quoting

---

[2] The Court instructed counsel to visit the U.S. Marshal's office after the April 8, 2014 hearing and submit briefing to the Court if a dispute remained.

4

Noritake Co. v. M/V HELLENIC CHAMPION, 627 F.2d 724, 728 (5th Cir. 1980)). Where a contractual interest rate is "greater than necessary to compensate [a lienholder] for its loss," a court may, in its discretion, award an interest rate that is "an accurate reflection of [the] loss." Triton, 671 F. Supp. 2d at 764-65.

"When awarding prejudgment interest, the Court has discretion with regard to the interest rate and the date when interest begins to accrue." Norfolk S. Ry. Co. v. Moran Towing Corp., 718 F. Supp. 2d 658, 663 (E.D. Va. 2010); see also Norfolk & Portsmouth Belt Line R.R. Co. v. M/V MARLIN, No. 2:08cv134, 2009 AMC 2465, 2009 U.S. Dist. LEXIS 104327, at *43-44 (E.D. Va. Oct. 9, 2009) ("A trial court's broad discretion 'over awards of prejudgment interest extends to its determinations of when interest begins.'" (quoting Indep. Bulk Transp., Inc. v. Vessel Morania Abaco, 676 F.2d 23, 25 (2d Cir. 1982)). The Court may consider sources such as "the statutory rate in the forum state," the "average prime rate or adjusted prime rate," or "the yield on short-term U.S. Treasury Bills, as an appropriate gauge by which to award a plaintiff prejudgment interest." Great Lakes Bus. Trust v. M/T ORANGE SUN, 855 F. Supp. 2d 131, 155-56 (S.D.N.Y. 2012). "Prejudgment interest is typically awarded from the date of the loss," although the court, in its discretion, may "elect to start the accrual of interest . . . 'from the date the damaged party loses the use of

5

its funds, e.g., from the time expenditures were actually made.'" Norfolk & Portsmouth Belt Line R.R. Co. v. M/V MARLIN, No. 2:08cv134, 2009 AMC 2465, 2009 U.S. Dist. LEXIS 104327, at *43-44 (E.D. Va. Oct. 9, 2009).

"To deny prejudgment interest, the court must find circumstances that would make it inequitable for the losing party to pay it." 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 3-2, at 121 (5th ed. 2011) (citing Inland Oil & Transp. Co. v. Ark-White Towing Co., 696 F.2d 321, 327-28 (5th Cir. 1983)). Such "peculiar circumstances" include "an unwarranted delay in bringing suit, a damages award substantially less than that sought, a genuine dispute regarding liability, complex legal and factual issues, and a bad[-]faith claim." U.S. Fire Ins., 966 F.2d at 828 n.14 (4th Cir. 1992) (citing Nunley v. M/V Dauntless Colocotronis, 863 F.2d 1190, 1204 (5th Cir. 1989); Phillips Petroleum Co. v. Stokes Oil Co., 863 F.2d 1250, 1258 (6th Cir. 1988)). However, the United States Supreme Court instructs that whether interest on damages should be allowed "depends upon the circumstances of each case, and rests very much in the discretion of the tribunal which has to pass upon the subject, whether it be a court or a jury." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 196 (1995) (quoting The Scotland, 118 U.S. 507, 518-19 (1886)). Recognizing that the "essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss,"

6

id. at 195, the Supreme Court has held that "neither a good-faith dispute over liability nor the existence of mutual fault [alone] justifies the denial of prejudgment interest in an admiralty . . . case," id. at 199.

### III. DISCUSSION

#### A. Prejudgment Interest Rate

Plaintiff asserts that the contractual interest rate, 2% per month, or 24% per year, is the appropriate rate that would compensate Plaintiff for its lost opportunity costs. Plaintiff also observes that, because the maximum award it can receive is $850,000, the jointly stipulated amount of the security bond posted by Claimant, even if the Court did award the contractual interest rate, Plaintiff would effectively receive prejudgment interest of only approximately 7.5% per year rather than 24% per year. In the event the Court disagrees that the contractual interest rate is appropriate, Plaintiff argues that the Court should award prejudgment interest at the prime rate, which Plaintiff's counsel asserts has remained at 3.25% during the relevant time period.

Claimant, on the other hand, asserts that the Court should not award Plaintiff any prejudgment interest at all, but in the event that the Court determines some amount of prejudgment interest is necessary, the Court should award such interest at the 3-month Treasury bill rate, which Claimant's counsel asserts is presently .03%. See Triton, 671 F. Supp. 2d at 765 (awarding

7

prejudgment interest at 3-month Treasury bill rate, observing that "a rate based on 'short-term, risk free obligations' fairly compensates [plaintiff] for its loss of the price of the necessaries").

The Court finds no "peculiar circumstances" in this case that render inequitable the award of prejudgment interest to Plaintiff. U.S. Fire Ins., 966 F.2d at 828 n.14. Plaintiff did not delay in bringing suit; the damages award will not be substantially less than that sought; the issues were not particularly complex; and, Plaintiff did not bring suit in bad faith. Id. Furthermore, the parties' dispute was not frivolous, but, rather, was "a good-faith dispute," which the Supreme Court has held does not "justif[y] the denial of prejudgment interest." City of Milwaukee, 515 U.S. at 199. Cf. W.R. Grace & Co. v. S.C. Loveland Co., Nos. 88-1311, -1318, 1990 U.S. App. LEXIS 26980, at **9-10 (4th Cir. Jan. 31, 1990) (observing "that an award of prejudgment interest may [not] be refused simply because the case is complex," especially if the case is no more complex than the run of admiralty cases and if the claimant itself has not unnecessarily added to its complexity"). However, the Court also finds that the contractual interest rate of 2% per month, or 24% per year, is greater than necessary to compensate Plaintiff for its loss. As Claimant observed at the April 8, 2014 hearing, Plaintiff presented no evidence or witnesses to show its actual "lost

8

opportunity costs." Furthermore, the Court observes that Plaintiff has not established that it did, in fact, forgo subsequent business for lack of funding, or that it was required to borrow funds in order to continue its business.

Accordingly, exercising the discretion afforded to this Court, the Court awards prejudgment interest to Plaintiff at the prime rate, observing that "the prime rate best compensates a [plaintiff] . . . because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time." Morpho Detection, Inc. v. Smiths Detection Inc., No. 2:11cv498, 2013 U.S. Dist. LEXIS 150376, at *4 (E.D. Va. Oct. 17, 2013) (citations and internal quotation marks omitted); see Ameejee Valleejee, 661 F.2d at 313 (noting that district courts "have been urged to follow the interest rate prevailing commercially"). "In contrast, '[t]he 3 month Treasury Bill rate is the cost of raising funds by the Government,' and thus does not generally reflect a [plaintiff's] loss of use of money over time." Morpho Detection, 2013 U.S. Dist. LEXIS 150376, at *4 (quoting Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 833 (E.D.N.Y. 1995)); see also M/T ORANGE SUN, 855 F. Supp. 2d at 156 (2012 case awarding prejudgment interest at prime rate, observing that, "given artificially low T-bill rates

9

for the past period, an award of prejudgment interest at that rate would not be adequate").[3]

### B. Date from which Prejudgment Interest Accrues

Plaintiff asserts that, if the Court awards prejudgment interest at the contractual interest rate, prejudgment interest should accrue beginning on November 28, 2012, the date both parties agree the payment became overdue. On the other hand, if the Court awards a lower interest rate, Plaintiff alleges that prejudgment interest should accrue from October 29, 2012, the date the necessaries were provided to the vessel. See J.P. Provos Mar., S.A. v. M/V AGNI, Nos. Civ.A. 99-26, 29, 47, 106, 1999 U.S. Dist. LEXIS 12012, at *8 (E.D. La. July 29, 1999) (awarding prejudgment interest "from the date the necessaries were provided to the vessel"). Claimant argues that, if the Court awards prejudgment interest at all, it should accrue beginning on November 28, 2012, since Plaintiff had given Tramp until that date to pay for the fuel bunkers.

"The Court agrees with the weight of authority that prejudgment interest should start to accrue from the date of the loss," e.g., the date the invoice became due. M/V MARLIN, 2009

---

[3] In Triton, Judge Motz awarded prejudgment interest at the "three-month Treasury bill average rate" of 2.34 percent, which was slightly below the prime rate of 3.25 percent and which the parties agreed "was a reasonable [rate] (assuming the Court denied [plaintiff's] request for contractual interest)." Triton, 671 F. Supp. 2d at 765 n.10. The current three-month Treasury bill rate, as of April 4, 2014, according to the Claimant in this case, is .03 percent. See also the website for the Federal Reserve at (http://www.federalreserve.gov/releases/h15/data.htm).

U.S. Dist. LEXIS 104327, at 45; see also Atl. Forwarding, Ltd. v. MSL Int'l, LLC, No. 13-CV-00209, 2013 U.S. Dist. LEXIS 137131, at *18-19 (S.D.N.Y. Aug. 16, 2013) (finding that "prejudgment interest should commence when MSL breached each of the four invoices" and awarding prejudgment interest beginning "on the date these invoices became due"). After all, that is the date by which it can be said that Plaintiff should have expected to be paid.

## IV. CONCLUSION

For the reasons set forth above, the Court awards prejudgment interest to Plaintiff at the prime rate, accruing from November 28, 2012. The parties are **ORDERED** to submit to the Court, jointly if possible, a proposed order for the Court's approval, filed no later than **Thursday, April 17, 2014**, indicating the prejudgment interest amount Claimant owes to Plaintiff, calculated in accordance with this Opinion and Order, as well as the agreed amount of custodia legis expenses.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ [signature]
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 9, 2014

11